# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**CHARLES HARDIN**                                                                          **PLAINTIFF**

**V.**                                  **No. 4:21-CV-00605-BRW-ERE**

**KILOLO KIJAKAZI, Acting**
**Commissioner of Social Security**                                              **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

I.  **BACKGROUND**

On April 25, 2019, Mr. Charles Hardin protectively filed an application for benefits due to degenerative disc disease, a bulging disc, arthritis, no cartilage in knees, cirrhosis, possible liver or colon cancer, congestive heart failure, and type II diabetes. *Tr. 11, 177*.

1

At Mr. Hardin's request, an Administrative Law Judge ("ALJ") held a hearing on October 28, 2020, where Mr. Hardin appeared with his lawyer, and the ALJ heard testimony from Mr. Hardin and a vocational expert ("VE"). *Tr. 28-46*. The ALJ issued a decision on November 30, 2020, finding that Mr. Hardin was not disabled. *Tr. 8-27*. The Appeals Council denied Mr. Hardin's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-5*.

Mr. Hardin, who was sixty years old at the time of the hearing, has a GED and past relevant work experience as a dump truck driver, over-the-road truck driver, and security guard. *Tr. 43*.

## II.     THE ALJ's DECISION[1]

The ALJ found that Mr. Hardin had not engaged in substantial gainful activity from his alleged onset date of January 1, 2009 through his date last insured of December 31, 2010. *Tr. 13*. The ALJ found that Mr. Hardin has the following severe impairments: degenerative disc disease, degenerative joint disease, and obesity. *Id.* However, the ALJ found that Mr. Hardin did not have an impairment or combination

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g).

of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 15.*

According to the ALJ, Mr. Hardin had the residual functional capacity ("RFC") to perform light work, with the following limitations: (1) he could perform only occasional crouching, crawling, and kneeling; and (2) he needed the use of a cane in the dominant upper extremity to ambulate from the workstation. *Tr. 16.*

In response to hypothetical questions incorporating the above limitations, the VE testified that there were jobs available with these limitations, such as small parts assembler, electrical accessories assembler, and price marker. *Tr. 44.* Accordingly, the ALJ determined that Mr. Hardin could perform a significant number of jobs existing in the national economy and found he was not disabled.

### III.   DISCUSSION

#### A.   Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider

not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

      **B.**      **Mr. Hardin's Arguments for Reversal**

Mr. Hardin contends that the ALJ erred by: (1) failing to find that his coronary artery disease was a severe impairment; (2) failing to find a connection between his leg pain and back pain; (3) applying the wrong standard of proof; (4) failing to adequately evaluate his back pain; (5) basing the RFC on speculation and conjecture; and (6) failing to provide a "function-by-function" assessment in determining his RFC. *Doc. 13 at 1*.

Mr. Hardin also presents a host of arguments concerning the system in place for determining disability. He asserts that the "agency cares only about numbers and doesn't care at all about getting decisions right." *Id. at 20*. He also contends that the "regulations and policies for determining disability are unconstitutionally vague" and "leave too much discretion to ALJs[.]" *Id. at 18*.

The Court will consider each argument separately.

### 1.      Finding that Coronary Artery Disease was Non-Severe

Mr. Hardin provides a history of his coronary artery disease (both before and after the date last insured) and asserts that the ALJ erred in finding that this impairment was non-severe.

To support his argument, Mr. Hardin points to a portion of a cardiologist's impressions from a February 26, 2010 office visit noting that "nocturnal angina in patient with history of coronary artery disease, now worsening and progressive." *Tr. 522*. However, the note is unclear as to which condition, nocturnal angina or coronary artery disease, was worsening and progressive, and it does not attribute nocturnal angina to coronary artery disease. This same record documents that an EKG performed that day showed normal sinus rhythm and that a June 2006 cardiac catheterization showed minimal plaquing and otherwise normal coronaries. *Tr. 524*. Also, a June 2011 stress test was negative and, although Mr. Hardin had an "intermediate lesion in the ramus intermedius" artery, it was "not significant." *Tr. 14, 574*. Furthermore, only medical management was considered necessary to treat Mr. Hardin's coronary artery disease. *Id.* "An impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

Mr. Hardin argues that "[t]he fact that, prior to his date last insured, [he] was unable to walk on a treadmill is sufficient to establish his coronary artery disease as

a severe impairment." *Doc. 14 at 8*. Although there are notes that say Mr. Hardin was unable to walk on a treadmill, they do not say that it was related to his heart condition. *Tr. 522*. Just as likely is the fact that he was a "severely obese" smoker. *Tr. 521*. Additionally, during the same timeframe which Mr. Hardin now argues that he could not have performed light work, medical records reveal that he "dance[d] on the weekends." *Tr. 520*.

Neither Mr. Hardin's disagreement with the ALJ's assessment of the severity of his coronary artery disease or the fact that some evidence exists to support a contrary conclusion are sufficient to reverse the ALJ's conclusion, which has substantial support in the record.

### 2. Connection Between Mr. Hardin's Leg Pain and Back Condition

Mr. Hardin argues that the ALJ failed to make a connection that leg pain could have been related to his back condition, based on a January 2008 progress note documenting "decreased sensation over the L4 nerve distribution . . . and weakness with EHL." *Doc. 13 at 12; Tr. 400.* According to Mr. Hardin, that record rebuts the ALJ's finding that "evidence reflects normal findings of the lower extremities." *Doc. 13 at 13*. Mr. Hardin also says that his "doctor believed that [his] leg pain was more likely related to his back conditions than his knee . . . [but] [t]he ALJ apparently failed to connect these dots." *Id*. However, as the ALJ noted, examination of Mr. Hardin's back, upper and lower extremities revealed normal findings and no noted

6

gross motor or sensory deficits. *Tr. 521, 540.* Additionally, a connection between Mr. Hardin's leg and back pain does not overcome the evidence in the record as a whole. Notably, Mr. Hardin's leg pain and back conditions were not the sole cause of his difficulty getting up from the toilet. The ALJ correctly noted the medical records revealed that Mr. Hardin's "trouble getting up from the toilet [was] due to the combination of his weight and his knee pain." *Tr. 18*. On March 26, 2010, Mr. Hardin was "severely obese" with a height of 6'2" and weight of 310 lbs. *Tr. 521*. Furthermore, as the Commissioner points out, Mr. Hardin "has not cited evidence establishing any additional specific functional limitation from his leg pain or back condition not already accounted for by the ALJ." *Doc. 14 at 5*. Accordingly, this argument fails.

### 3. **Standard of Proof**

According to Mr. Hardin, the ALJ failed to apply the correct standard of proof when reviewing the evidence, because he used the word "reasonably" in his decision. Specifically, the ALJ found that "there are certain inconsistencies within the record that lead to the reasonable conclusion that the claimant's symptoms are not as limiting as alleged." *Tr. 18*. The ALJ's "reasonable conclusion" in no way indicates that his decision is not supported by substantial evidence, which is "less than a preponderance of the evidence but it is such relevant evidence as a *reasonable mind* would find adequate to support the [C]ommisioner's conclusion." *Nowling v. Colvin*,

7

813 F.3d 1110, 1119 (8th Cir. 2016) (quoting *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (internal quotation omitted) (emphasis added).

### 4. Evaluation of Mr. Hardin's Back Pain

Mr. Hardin argues that the ALJ failed to adequately evaluate his back pain. He asserts that "[t]he fact that [he] has been prescribed strong medication such as [m]orphine and [h]ydrocodone, combined with the objective imaging findings and the fact that he has been referred to the pain clinic all support [his] allegations of disabling back pain." *Doc. 13 at 15*. Actually, the ALJ noted that the "record contains reports of back pain since well before the claimant's alleged onset date." *Tr. 17*. After discussing the medical imaging, the ALJ further noted that "[f]ollowing the date last insured, the claimant continued to report back pain but was observed with normal findings, such as normal strength, slow but steady ambulatory gait, no tenderness, and no focal motor deficits." *Id.* The ALJ also considered Mr. Hardin's back pain by noting the "exertional limitations along with some postural protections . . . ." *Id.*

The ALH also properly considered the fact that Mr. Hardin was a no-show for appointments in September and December 2008, but then called in for pain medications because he was out and "going through withdrawals." *Tr. 1305*. As the ALJ noted, Mr. Hardin again was a no-show for an appointment in January 2009. *Tr. 18, 1301*. The ALJ concluded that Mr. Hardin's missed appointments suggest

8

that his symptoms are not as limiting as alleged or can be controlled with medication. *Tr. 18.* Notably, a June 2011 medical record states that Mr. Hardin had no primary care physician and "hasn't been to the doctor in years." *Tr. 541.*

Substantial evidence supports the ALJ's evaluation of Mr. Hardin's back pain, and Mr. Hardin has failed to demonstrate any related legal error.

### 5. Basis for the RFC

Mr. Hardin contends that the "RFC is based on speculation and conjecture" and "is not supported by any medical opinion." *Doc. 13 at 16.* To the contrary, the ALJ properly reviewed and discussed all the medical and non-medical records, as well as Mr. Hardin's subjective complaints, and provided a properly supported RFC. See *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (describing an RFC as an administrative assessment of all relevant evidence: medical records, observations of treating physicians and others, and claimant's own description of his limitations); *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016) (claimant bears burden of establishing RFC; because RFC is medical question, it must be supported by some evidence of claimant's ability to function in workplace). Mr. Hardin has not established that he is entitled to additional limitations beyond those already included in the RFC.

Mr. Hardin also argues that the "RFC does not contain any nonexertional limitations." *Doc. 13 at 16*. Yet, the RFC specifically limits Mr. Hardin to "only

occasional crouching, crawling, and kneeling." *Tr. 16.* Social Security Ruling 85-15 specifically lists these as nonexertional limitations. SSR 85-15, 1985 WL 56857, at *2, 6-7 (1985).

In sum, the ALJ's RFC is supported by substantial evidence in the record.

### 6. Not Providing a "Function-by-Function" Assessment re: RFC

Mr. Hardin claims that the ALJ failed to perform a function-by-function RFC assessment of his impairments, but he fails to explain how the ALJ failed to perform this duty. After considering this argument, the Court finds no basis for reversal. See *Vandenboom v Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting "out of hand" a conclusory argument providing no analysis of the relevant law or facts regarding the issue at hand).

### 7. Challenges to Disability Determination Process

Mr. Hardin claims that the entire disability system is illogical, irrational, and unconstitutional. However, his arguments rely on broad, generalized grievances with the process as a whole, and he has not identified any particularized injury or causal relationship between the injury and the challenged conduct, nor can he show a likelihood that the purported injury would be redressed by a favorable decision. The Court does not consider these unsupported arguments as evidence and finds they are not relevant to the review of the administrative decision at issue. Such a review is

restricted jurisdictionally under 42 U.S.C. § 405(g) to "the evidence upon which the findings and decision complained of are based."

## IV.  CONCLUSION

For the reasons discussed above, the Court finds that the ALJ applied proper legal standards in evaluating Mr. Hardin's claims and substantial evidence supports the decision to deny benefits. The Court further finds that Mr. Hardin's remaining arguments are without merit.

IT IS THEREFORE RECOMMENDED that the Court affirm the decision and enter judgment in favor of the Commissioner.

IT IS SO ORDERED this 15th day of June, 2022.

_____
UNITED STATES MAGISTRATE JUDGE